IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**KENNETH AGUILAR,**

    Petitioner,

v.                                                                                                       **No. 17-cv-1264 JCH/SMV**

**VICTOR RODRIGUEZ,**
**ROBERT B. CORIZ, and KEWA PUEBLO,**

    Respondents.[1]

### MEMORANDUM OPINION AND ORDER
### OVERRULING OBJECTIONS, ADOPTING MAGISTRATE JUDGE'S
### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION,
### AND DISMISSING PETITION

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 11] ("PF&RD"), issued on June 20, 2018. Petitioner Kenneth Aguilar filed Objections [Doc. 12] on July 5, 2018. No party responded to the Objections, and the time for doing so has passed. Petitioner failed to exhaust his claims in tribal court. The Court agrees with Judge Vidmar that Petitioner has not shown that his failure to exhaust should be excused. Accordingly, the Court will overrule the Objections [Doc. 12], adopt the PF&RD [Doc. 11], dismiss the underlying Petition for Writ of Habeas Corpus Pursuant to 25 U.S.C. § 1303 [Doc. 1] **without prejudice**,[2] and deny as moot all other requests and motions.

---

[1] Kewa Pueblo has been dismissed from this action. [Doc. 5].
[2] If Petitioner actually attempts to exhaust his claims with the Pueblo, and the Pueblo actually applies a procedural bar, he may return to this Court to litigate whether such bar extends to this Court. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (a federal court cannot address claims that were defaulted in state court on independent and adequate state procedural grounds "unless [the petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."); *Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002) (same).

## Background

Petitioner is an enrolled member of the Pueblo of Kewa (also known as the Pueblo of Santo Domingo), a federally recognized Indian Tribe in New Mexico. [Doc. 1] at 3. On December 6, 2017, he was convicted in the Pueblo of Santo Domingo Tribal Court of two counts of fraud, two counts of larceny, and two counts of conspiracy. [Doc. 1] at 1, [Doc. 1-1] at 1. The Tribal Court imposed a total sentence of 2,160 days' incarceration, $20,000 in restitution, and $700 in fines. [Doc. 1] at 6, [Doc. 1-1] at 1. Petitioner argues that he is entitled to a writ of habeas corpus pursuant to 25 U.S.C. § 1303 because his trial, conviction, and sentence violated his rights under the Indian Civil Rights Act ("ICRA"). [Doc. 1]. Defendant Coriz argues that the Petition should be dismissed because Petitioner failed to exhaust his tribal remedies.

## Petitioner must attempt to exhaust his tribal remedies before this Court will pass on the merits of his claims.

The doctrine of tribal exhaustion is a judicially created rule established by the United States Supreme Court in *Nat'l Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845 (1985), and expanded in *Iowa Mut. Ins. Co. v. LaPlant*, 480 U.S. 9 (1987). Under the doctrine, a federal court should, as a matter of comity, require the parties to a lawsuit implicating tribal interests to first exhaust their remedies in tribal court before pursuing an action in federal court. *Keer-McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir. 1997). Tribal courts play a vital role in tribal self-government, and respect for that role requires that examination of tribal issues be conducted first by the tribal court itself. *Reservation Tel. Co-op. v. Affiliated Tribes*, 76 F.3d 181, 184 (8th Cir. 1996). Absent exceptional circumstances, federal courts are to abstain from hearing cases that challenge tribal court authority until tribal remedies, including tribal appellate

review, are exhausted. *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1149 (10th Cir. 2011).

This exhaustion requirement applies to habeas petitions brought pursuant to § 1303. *Valenzuela v. Silversmith*, 699 F.3d 1199, 1205–06 (10th Cir. 2012). "In order to satisfy the exhaustion requirement, a criminal defendant must pursue a direct appeal or show that such an appeal would have been futile." *Alvarez v. Lopez*, 835 F.3d 1024, 1027 (9th Cir. 2016). "[T]he aggrieved party must have actually sought a tribal remedy, not merely have alleged its futility." *White v. Pueblo of San Juan*, 728 F.2d 1307, 1312 (10th Cir. 1984). "It is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Valenzuela*, 699 F.3d at 1207 (alterations omitted) (quoting *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)).

Federal courts have waived the exhaustion requirement under certain circumstances. For example, if tribal remedies do not exist, are merely hypothetical, or are "informal," exhaustion is not required. *See Necklace v. Tribal Court of Three Affiliated Tribes*, 554 F.2d 845, 846 (8th Cir. 1977). Courts look at two indicators in determining whether a tribal remedy actual exists. First, is there some indication of an appellate process or other formal remedy? For example, a written tribal code may describe the process for appealing or otherwise obtaining review. Second, has the petitioner actually attempted to obtain relief from the tribe? A failed attempt to obtain review can show that the review process does not actually exist or is futile. *Compare Valenzuela*, 699 F.3d at 1205–06 (federal habeas petition dismissed so that the petitioner could attempt to exhaust tribal remedies where there was a written tribal code describing a remedy, and

the petitioner had made no attempt to exhaust), *and White*, 728 F.2d at 1313 (upholding the dismissal of a non-habeas ICRA case where there was a written tribal code describing a tribal remedy and the petitioners had made no attempt to exhaust), *with Toya v. Toledo*, No. 17-cv-0258 JCH/KBM, 2017 U.S. Dist. LEXIS 160173, at *3–6, 8–9 (D.N.M. Sept. 9, 2017) (unpublished) (Magistrate Judge's Proposed Findings and Recommended Disposition) (no *further* exhaustion required where the petitioner requested reconsideration of sentencing, but did not appeal, and the written tribal code explicitly prohibited appeals), *adopted by district judge,* 2017 U.S. Dist. LEXIS 159059 (D.N.M. Sept. 26, 2017), *and Garcia v. Rivas*, No. 15-cv-0377 MCA/SCY, 2016 WL 10538197 (D.N.M. March 11, 2016) (unpublished) (Magistrate Judge's Proposed Findings and Recommended Disposition) (no *further* exhaustion required where the petitioner attempted to obtain relief from the Pueblo three times and was denied each time), *and Necklace*, 554 F.2d at 846 (exhaustion requirement waived where only "informal procedures" were available in tribal court), *and Wounded Knee v. Andera*, 416 F. Supp. 1236, 1239 (D.S.D. 1976) (no *further* exhaustion required where the petitioner requested permission to appeal in accordance with the tribal code's appeals section, but the tribe took no action on the request for nearly six months).

In this case, both factors weigh against proceeding to the merits at this time. First, there is some indication that an appeal process exists. Petitioner admits receiving and signing an "Advisement of Rights Order" which explicitly states, "I understand that I may appeal my conviction, but I must do so within 7 days of my conviction." [Doc. 1-3] at 1; [Doc. 1] at 7.

4

Granted, this Advisement is not as definitive as a written tribal code. Nevertheless, it is an express written reference to a specific formal remedy.

Second, Petitioner admits he has made no attempt to appeal. Had he tried and been rebuffed (or ignored), that failed attempt might tend to support his argument that there is no actual appellate process (and that the Advisement's reference to an appeal is illusory). But he did not try. Importantly, Petitioner cites no case suggesting that on facts similar to these, the Court should proceed to the merits. In fact, in surveying the cases, it is apparent that the Court should abstain and allow Petitioner to attempt to bring his claims before the Pueblo.

## The Magistrate Judge's Proposed Findings and Recommended Disposition

Judge Vidmar issued his PF&RD on June 20, 2018. [Doc. 11]. He found that Petitioner had failed to exhaust his tribal court remedies. *Id.* at 4. Petitioner conceded that he signed the "Advisement of Rights Order" acknowledging, "I understand that I may appeal my conviction . . ." [Doc. 1-3] at 1; [Doc. 1] at 7. Petitioner made no attempt to appeal. Judge Vidmar found that Petitioner's assertion that he believed there was no available tribal court remedy was belied by the fact that he signed a statement acknowledging his right to appeal. [Doc. 11] at 4. Moreover, Judge Vidmar found that even if Petitioner believed there was no available remedy, and had been incarcerated and pro se during the appeal period, that would not have excused his lack of exhaustion. *Id.* (citing *Valenzuela*, 699 F.3d at 1207 ("It is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.") (alterations omitted)).

**Petitioner's Objections**

Petitioner objects to the PF&RD on several grounds. [Doc. 12]. He argues that he was not required to exhaust tribal remedies because no tribal remedies actually existed. *Id.* at 4–6. Alternatively, he argues that if tribal remedies existed, two exceptions to the tribal exhaustion rule excuse his failure to exhaust: (1) the underlying criminal proceedings against him were conducted in bad faith, and (2) exhaustion would have been futile. *Id.* at 7–8. Finally, he argues that he did exhaust all remedies that were available "at the time." *Id.* at 13. Accordingly, Petitioner asks the Court to reject the PF&RD and grant the petition. *Id.* at 14. In the alternative, Petitioner asks the Court to order additional briefing, allow discovery, conduct an evidentiary hearing, and release him pending final ruling on the merits. *Id.*

**Standard of Review for
Objections to Magistrate Judge's PF&RD**

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]" *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). To preserve an issue, a party's objections to a PF&RD must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* Moreover, "theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1030–31 (10th Cir. 2001).

## I. Petitioner fails to show that tribal remedies were non-existent.

Petitioner argues that he is not required to exhaust his tribal remedies where such remedies are non-existent. [Doc. 12] at 4. He argues further that informal or unwritten tribal remedies are, for all intents and purposes, non-existent. While he acknowledges signing a document that explicitly notified him of a right to appeal, *id.* at 5, he asks the Court to find that he had no such right "[because there is no] showing of the tribe's appellate body or appellate procedure, or any showing that [he] was informed orally or in writing of the procedure to appeal or challenge his judgment and sentence." *Id.* Petitioner relies on several cases, none of which the Court finds persuasive under the facts of this case. In none of the cases cited by Petitioner did the court proceed to the merits where, as here, there was some indication of formal tribal remedies available and the petitioner had made no attempt to exhaust those remedies.

In *Necklace*, the petitioner sought habeas relief on the grounds that she had been confined to a state hospital for several years without due process. 554 F.2d at 845. The court considered that the petitioner had "been under a Tribal Court Order of Commitment for approximately five years, allegedly in violation of due process," and concluded, "[w]hile it appears that there are informal procedures by which Necklace might seek relief in the tribal courts, it further appears that the laws of the [tribe] contain no formal habeas corpus procedure. Under these circumstances, we hold that Necklace is not required to exhaust her tribal remedies." *Id.* at 846. The court gave no further detail about what "informal procedures" were available in tribal court. *See id.* at 845–46. It was apparently undisputed, however, that no formal remedy was available to the petitioner. *See id.*

In *Wounded Knee*, the petitioner had timely and properly filed "a request for permission to appeal" her tribal court criminal conviction. 416 F. Supp. at 1237. After six months, the tribal courts had taken no action on the request. *Id.* at 1238. Consequently, the petitioner filed a habeas action in federal district court. *Id.* The district court held an evidentiary hearing. At that hearing, it was established that the petitioner had properly filed her request to appeal with the clerk of the tribal court. The tribal code directed the clerk of court to forward the request to the "chief judge." But no one in the tribal legal community knew of any "chief judge," and all witnesses believed the trial judge and his court to be the only judge and court for the tribe. The chairperson of the tribe testified that if she had been notified of the request to appeal, she would have convened an appellate court. However, there was nothing in the code directing the petitioner, the clerk, or anyone else to notify the chairperson of a request to appeal. *Id.* Under those circumstances, the district court found that the petitioner had done "all that she could reasonably do to use the tribal appeals procedure. . . . Everything available to a resourceful legal mind was done[.]" *Id.* at 1239–40. As a matter of law, therefore, the court determined that the petitioner had exhausted her tribal court remedies. *Id.* at 1239.

In *Toya*, the petitioner was an enrolled member of the Pueblo of Jemez. 2017 U.S. Dist. LEXIS 160173. He pleaded guilty in tribal court to four charges related to drunken driving. *Id.* at *2–3. He tried to withdraw his guilty plea at sentencing, but the judge denied the request and sentenced him. The judge orally advised him that he could appeal or ask for reconsideration. The judge imposed a total sentence of 270 days' incarceration and $800 in fines and reminded the petitioner that he could appeal. The petitioner filed a motion for reconsideration. Within

about two weeks, the judge held a hearing on the motion. He suspended the remainder of the petitioner's sentence and placed him on probation. *Id.* at \*3–5.

Toya filed a federal habeas petition under § 1303. The respondents argued that Toya had not exhausted all available tribal remedies because he had not appealed. *Id.* at \*8. The Honorable Karen B. Molzen, United States Magistrate Judge, found that although the trial judge had told the petitioner he could appeal, the Jemez Tribal Code explicitly prohibited appeals. *Id.* at \*9–10. Judge Molzen found, therefore, that any other tribal remedies were "available in theory but not in fact." *Id.* at \*9. There is no such express prohibition against appeals in this case.

Here, Petitioner argues that there is no "formal appellate process and no known appellate body" for the Pueblo. [Doc. 12] at 4. He alleges that at the time of his conviction, there were "no judicial officers appointed or available for appellate review of his case. There are no other tribal officials or designated body to independently review the conviction." *Id.* at 6. Petitioner argues that much of the traditions and customs of the tribe—apparently, including the procedures for appealing criminal convictions—are unwritten. *Id.* (citing to *Coriz v. Rodriguez*, 17-cv-1258 JB/KBM).[3]

Taking Petitioner's factual allegations as true, the Court accepts that the only indication of a formal tribal remedy is the "Advisement of Rights Order." The Court presumes that other indications of a formal tribal remedy, such as written appellate rules or a sitting appellate

---

[3] Although *Coriz* is strikingly similar to the instant case—same defendants, same attorneys, nearly identical claims, and, in fact, the two petitioners appear to have been criminally tried together on similar charges—no party has moved for consolidation. *See Coriz v. Rodriguez*, 17-cv-1258 JB/SMV.

tribunal, are not present.  Based on these facts, the question is whether Petitioner has shown that no tribal remedy actually exists.  He has not.

The "Advisement of Rights Order," [Doc. 1-3] at 1; [Doc. 1] at 7, evidences a formal tribal remedy.  Petitioner has made no attempt to exhaust that remedy.  The cases Petitioner relies on do not support his position.  Petitioner has cited no case—and the Court has searched in vain for one—in which a court proceeded to the merits of a tribal habeas claim where (1) the petitioner had made no attempt to exhaust, even though (2) there was some indication of a formal remedy available to the petitioner.  Here, under the factual circumstances as alleged, Petitioner fails to show that no tribal remedy existed.

## II.  Petitioner fails to show that his lack of exhaustion should be excused.

Petitioner argues that even if exhaustion is required in his case, it should be excused for two reasons.  First, he argues that the underlying criminal proceedings against him were conducted in bad faith.  Second, he argues that exhaustion would be futile.  [Doc. 12] at 7–12.

> The tribal exhaustion rule is based on principles of comity. *See Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006).  It serves several purposes.  First, it reinforces Congress's strong interest in promoting tribal sovereignty, including the development of tribal courts. *Nat'l Farmers*, 471 U.S. at 856.  Second, it assists the orderly administration of justice in federal courts by allowing a full record to be developed in the tribal court before either the merits or any question concerning appropriate relief is addressed in federal court. *Id.*  Third, the rule gives a tribal court a full opportunity to rectify any errors it may have made. *Id.* . . . .
>
> However, . . . as a prudential rule based on comity, the tribal exhaustion rule is not without exception. *Crowe & Dunlevy*, 640 F.3d [1140, 1150 (10th Cir. 2011)].  Specifically, the Supreme Court has explained that **exhaustion of tribal remedies is not required where (1) "an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith,"**

> **(2) "the action is patently violative of express jurisdictional prohibitions," or (3) "exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction."** *Nevada v. Hicks*, 533 U.S. 353, 369 (2001) (quotations omitted).

*Valenzuela*, 699 F.3d at 1206–07 (emphasis added) (internal quotation marks and alterations omitted).

### A. Petitioner fails to show that the assertion of tribal jurisdiction over his criminal proceedings was motivated by a desire to harass or was conducted in bad faith.

Petitioner urges that the tribal court proceedings were conducted in bad faith. [Doc. 12] at 7–8. He asserts the following: He was arrested, tried, convicted, and sentenced in less than two weeks. He was given only six days to find an attorney. The tribal court unreasonably denied his request for a continuance so that he could find a lawyer. *Id.* at 7. The underlying tribal proceeding was "comprised of tribal officials hurling accusations at Petitioner." *Id.* (citing [Doc. 1] at 12). "The tribe provided no evidence, witnesses[,] or testimony to support the prosecution. [Petitioner] was not allowed to view the evidence against him. He was not allowed to bring in any witnesses or testimony in his favor or cross-examine any witnesses against him. [Petitioner] has maintained his innocence. [[Doc. 1] at 14.] He was sentenced to six years for non-violent crimes, with no evidence on the record." [Doc. 12] at 7–8.

Courts consider three factors in determining whether a criminal prosecution is commenced in bad faith or to harass: (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion,

11

typically through the unjustified and oppressive use of multiple prosecutions. *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997).

The plaintiffs in *Phelps* were members of the Westboro Baptist Church. They sued the Shawnee County (Kansas) District Attorney and the State of Kansas under 42 U.S.C. § 1983 for First Amendment retaliation. *Phelps*, 122 F.3d at 887. They alleged that nine state criminal prosecutions brought against them were initiated in retaliation for their anti-homosexual picketing and protesting in Shawnee County and other locations across the United States. *Id.* at 889–90. The district court dismissed the suit based, in part, on *Younger* abstention. That is, based on notions of comity and federalism, the district court declined to interfere in pending state criminal proceedings. *Id.* at 889 (citing *Younger v. Harris*, 401 U.S. 37 (1971)). On appeal, the plaintiffs argued that the bad-faith-and-harassment exception to *Younger* abstention should apply, and therefore, the federal court should proceed to the merits of their civil rights case. *Id.* at 889–90.

The plaintiffs alleged that the defendants' bad faith and harassment was evidenced by the following: "(1) defendant Hamilton and her husband ha[d] frequently communicated personal animosity and hostility toward the plaintiffs; (2) defendant Hamilton made statements in her campaign for district attorney that she would prosecute the plaintiffs; and (3) the plaintiffs have been subjected to a substantial number of prosecutions indicative of retaliatory animus." *Id.* at 890. In fact, 20 criminal cases had been brought against members of the church. *Id.* On de novo review, the Tenth Circuit agreed with the district court and found that these circumstances did not meet the bad faith exception to *Younger* abstention. *Id.* at 891.

Here, Petitioner cites no case or authority of any kind suggesting that the factual circumstances in this case would meet the bad faith exception to the tribal exhaustion rule. He merely sets out the three general exceptions and conclusorily argues that his underlying proceedings meet the bad faith exception. [Doc. 12] at 7–8. Even accepting as true all of Petitioner's allegations about the circumstances of his criminal proceedings in tribal court, they do not meet the bad faith exception. They might show that his prosecution did not comport with ICRA, but they do not show bad faith or harassment. The circumstances he describes simply do not indicate bad faith. This is especially evident in light of the facts in *Phelps*. Petitioner fails to show that the assertion of tribal jurisdiction over his criminal proceedings was motivated by a desire to harass or was conducted in bad faith. Therefore, his lack of tribal court exhaustion is not excused on that basis.

### B. Petitioner fails to show that exhaustion would be futile.

Petitioner argues that the Court should excuse his failure to exhaust because exhaustion would be futile. [Doc. 12] at 8–12. First, he argues that the tribe has no written appellate procedures and no identifiable appellate body. He explains that he himself is a former Lieutenant Governor and tribal court judge, and thus, he is qualified to testify that the tribe's traditional law and process provides no appeal procedure.[4] *Id.* at 8. He argues that the reference to an appeal in the "Advisement of Rights Order" is illusory. *Id.* at 8–10

---

[4] The thrust of his argument seems to be that if anyone would know that no appellate procedure is available, it would be him. *See* [Doc. 12] at 8. But if that is the case—if he is so intimately familiar with the tribal court's processes that this Court should simply take his word for the fact that the tribal court has no appellate process—then why did he sign a form acknowledging that such a process exists? In other words, why should this Court simply accept his assertion that he had no right to appeal, when he signed a form stating that he had a right to appeal?

The Court is not persuaded, however, that Petitioner's own self-serving testimony, alone, is sufficient to find that there is no actual appellate process, especially when the Pueblo refers to such a process in writing. The only cases Petitioner cites (or that the Court has found) on the matter involve *actual failed attempts* to exhaust, which evidence the illusory nature of the "remedies." *See Toya*, 2017 U.S. Dist. LEXIS 160173, at *3–6, 8–9 (implicitly finding that the sentencing judge's reference to an appeal process and the other references to potential remedies were illusory because the tribal code actually explicitly prohibited appeals); *Garcia*, 2016 WL 10538197, at *2–3 (declining to require further attempts to exhaust where the petitioner made three attempts and all were denied, and where no mention was made of any formal tribal remedy); *Wounded Knee*, 416 F. Supp. at 1239 (implicitly finding that the tribal code's reference to an appeal process was illusory because the petitioner properly requested permission to appeal but the tribe took no action on the request for nearly six months). Here, Petitioner has no actual failed attempt or other evidence to corroborate his self-serving testimony that the appeal process is illusory. Therefore, the cases do not persuade the Court that it should credit Petitioner's version over the Pueblo's.

Finally, Petitioner argues that to the extent review is possible by the Tribal Council, the remedy would be "circular and unfair" because "Tribal Officials [acted as] the jury" in the underlying proceedings. [Doc. 12] at 12. He argues that it would be "inherently unfair" to require him to seek redress from the same people who convicted him. *Id.* Petitioner cites no authority for this proposition. In fact, it is standard practice in both New Mexico state court and in this Court for a habeas petition to be decided by the trial judge. Petitioner fails to show that

14

tribal court exhaustion would be futile, and therefore, his lack of exhaustion is not excused on that basis.

### III. The Court accepts Petitioner's factual allegations as true but not his legal conclusions.

Petitioner argues that the Court must give deference to his factual allegations at this stage of the proceedings. [Doc. 12] at 12–13. He alleges, for example, that "there is no appeal procedure provided in the tribal court's traditional law and process[,]" and that "there is no written code." *Id.* at 13. The Court accepts these factual allegations as true. However, his argument that he has "exhausted all tribal remedies" and that any other efforts "to engage the sovereign action or response of the Tribal Court are futile," *id.*, are not factual allegations. They are legal conclusions. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Even accepting all of Petitioner's factual allegations as true, and on de novo review, the Court agrees with Judge Vidmar that dismissal for lack of exhaustion is warranted.

### IV. The Court cannot clearly determine whether the underlying claims are procedurally defaulted.

Petitioner argues that "the seven-day period [to appeal] ended one week after his trial and approximately two[ ]weeks after his arrest. As such, according to the Tribe's own argument, there is no remaining tribal remedy to exhaust." [Doc. 12] at 13. The argument seems to be that, because his appeal time has lapsed, he "actually exhausted what was available to him." *Id.* The Court rejects this argument. By his own admission, Petitioner made no attempt to appeal during

15

the seven-day period, and therefore, it cannot be said that he exhausted all that was available to him.

Likewise, to the extent Petitioner argues that because the seven-day deadline has passed, he can no longer raise his claims with the Pueblo (i.e, that his claims are procedurally defaulted), the Court is similarly unpersuaded. This is not a situation where the Pueblo has actually disposed of Petitioner's claims based on the untimeliness of an appeal. *See Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985) ("The mere existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."). Rather, the Court can only speculate as to whether the Pueblo would decline to hear Petitioner's claims based on procedural grounds. It is not clear that Petitioner's unexhausted claims are now procedurally barred under tribal law; the availability of a tribal remedy is uncertain. Therefore, the Court will follow the exhaustion procedure and dismiss this case without prejudice. *See* Brian R. Means, FEDERAL HABEAS MANUAL §§ 9B:13, 9C:52 (2018 ed.); *Toulson v. Beyer*, 987 F.2d 984, 987–88 (3d Cir. 1993) ("Because no state court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies. Our holding advances the interests of comity and federalism undergirding the exhaustion doctrine and will allow the New Jersey courts the opportunity to correct their own errors, if any[.]") (internal citations omitted); *Barnett v. Hargett*, 147 F.3d

1128, 1135 (10th Cir. 1999) (declining to hold unexhausted claim procedurally defaulted where "it is not at all clear" that the state court would hold the claim procedurally barred).

**Conclusion**

Petitioner failed to exhaust his tribal court remedies, and he fails to show that any exception excuses that failure. Accordingly, his § 1303 habeas petition will be dismissed without prejudice so that Petitioner may raise his claims with the Pueblo. If Petitioner actually attempts to exhaust his claims, and the Pueblo actually applies a procedural bar, he may return to this Court and litigate whether such bar was based on "independent and adequate" tribal grounds, and if so, whether he can show cause for the default and actual prejudice as a result of the alleged violation of ICRA, or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Hamm*, 300 F.3d at 1216.

**IT IS THEREFORE ORDERED** that Petitioner Kenneth Aguilar's Objections [Doc. 12] be **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 11] be **ADOPTED**.

**IT IS FURTHER ORDERED** that Petitioner Kenneth Aguilar's Petition for Writ of Habeas Corpus Pursuant to 25 U.S.C. § 1303 [Doc. 1] be **DISMISSED** for lack of exhaustion.

**IT IS FURTHER ORDERED** that Petitioner's request for "release . . . pending further review and adjudication on the merits of the case" [Doc. 1] at 2, his Motion for Immediate Release Pending Review of the Merits of his Petition [Doc. 13], his Motion to Substitute Thomas

Moquino, Jr., as Successive Governor [Doc. 14], and any other pending requests and motions be **DENIED** as moot.

   **IT IS SO ORDERED.**

                                          _____
                                          **JUDITH C. HERRERA**
                                          **United States District Judge**